## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STUDIO 417, INC., | ) | |
| Individually and on behalf of all | ) | |
| others similarly situated | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:20-cv-03127 |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| THE CINCINNATI INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | | |

## CLASS ACTION COMPLAINT

Plaintiff Studio 417, Inc. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant The Cincinnati Insurance Company ("Defendant" or "Cincinnati"), and in support thereof states and alleges the following:

## I.    NATURE OF THE ACTION

1.      This action arises out of Defendant's failure to provide insurance coverage for the losses sustained and expenses incurred by Plaintiff because of the ongoing Coronavirus (COVID-19) pandemic.

2.      For many years, Plaintiff has operated hair salons in the Springfield metropolitan area.  Plaintiff's operations have been and continue to be suspended and threatened by the novel coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19 ("COVID-19").

3.      To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Defendant, including property coverage, as set forth in The Cincinnati

1

Insurance Company's Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form.

4.      Defendant's coverage forms provide "Business Income" coverage, which promises to pay for actual loss due to the necessary suspension of operations caused by, among other things, accidental physical loss or accidental physical damage to the covered property.

5.      Defendant's coverage forms also provide "Extra Expense" coverage, which promises to pay the necessary expenses incurred to avoid or minimize the suspension of business and to continue operations.

6.      Defendant's coverage forms also provide "Civil Authority" coverage, which promises to pay for loss caused by action of civil authority that prohibits, among other things, access to the premises.

7.      Defendant's coverage forms, under sections titled "Duties in the Event of Loss," require in the event of a loss that the policy holder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

8.      Unlike some policies that provide Business Income (also referred to as "business interruption") coverage, Defendant's coverage forms do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases.

9.      Plaintiff was forced to suspend or reduce business at its hair salon due to COVID-19 and the ensuing orders issued by civil authorities in Springfield, Missouri and the State of Missouri, mandating the suspension of business for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

2

10.     Upon information and belief, Defendant has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Extra Expense, Civil Authority, and Sue and Labor coverages for losses suffered due to COVID-19, any executive orders by civil authorities that has required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations. In particular, The Cincinnati Insurance Company has denied claims submitted by Plaintiff under its policies.

## II.     **THE PARTIES**

11.     Studio 417, Inc. is a Missouri corporation, with its principal place of business in Springfield, Missouri. Plaintiff Salon 417, Inc. owns and operates salons located at 2144 E. Republic Road, Springfield, Missouri 65804, 444 W. McDaniel Street, Springfield, Missouri, and 4303 S. National Avenue, Springfield, Missouri 65810.

12.     Defendant is, and at all times relevant hereto has been, an insurance company writing insurance policies and doing business in the State of Missouri, capable of suing and being sued in the courts of this State. Defendant is a foreign corporation organized, incorporated and existing under the laws of the State of Ohio, with its principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.

## III.     **JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens of different states, and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

14.     Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that

is the subject of this action is situated in this judicial district. The policy at issue cover plaintiff's facilities located in the State of Missouri and Plaintiff purchased the policy at issue from an insurance broker located in the State of Missouri.

## IV.   FACTUAL BACKGROUND

### The Insurance Policies

15.     In return for the payment of a premium, Cincinnati issued Policy No. ECP0504158 to Plaintiff, for a policy period of September 18, 2018 to September 18, 2021, including a Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form. Policy No. ECP0504158 is attached hereto and incorporated by reference as Exhibit 1. Upon information and belief, the forms and endorsements to Exhibit 1 are materially the same as those policies held by the members of the proposed class.

16.     Plaintiff is the Named Insured under the policy, which remains in force.

17.     Defendant is the effective and liable insurer of the policy and policies meeting the class definition.

18.      Plaintiff has performed all of its obligations under Policy No. ECP0504158, including the payment of premiums. The Covered Property, with respect to the Building and Personal Property Coverage Form, are hair salons located at, among locations, 2133 E. Republic Road and 444 W. McDaniel Street, Springfield, Missouri.

19.     Sometimes property insurance is sold on a specific peril basis, where coverage is limited to risks of loss that are specifically listed (e.g., hurricane, earthquake, etc.). Many property policies sold in the United States, however, including those sold by Cincinnati, are "all-risk" property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.

4

20.      Under the heading "Covered Causes of Loss," Defendant agreed to pay for "direct 'loss' unless the 'loss' is excluded or limited" in the policies.

21.      Defendant did not exclude or limit coverage for losses from viruses in Plaintiff's policies or those of the other Class members.  The policy did not exclude pandemic coverage, communicable disease coverage or anything similar.

22.      Losses due to COVID-19 are a Covered Cause of Loss under Defendant's policies with the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form.

23.      In the Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form, Cincinnati agreed to pay for its insureds' actual loss of  Business Income sustained due to the necessary suspension of their operations during the "period of restoration" caused by direct "loss" to property at the covered premises.

24.      "Loss" is defined to mean accidental physical loss or accidental physical damage.

25.      "Suspension" is defined to mean the slowdown or cessation of business activities and that part or all of the covered premises is rendered untenable.

26.       "Period of restoration" is defined to mean the period of time that begins at the time of direct loss.

27.      "Business Income" is defined to mean net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

28.      The presence of virus or disease can constitute physical loss of or damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting

5

arm—Insurance Services Office, Inc. or "ISO"—circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would has a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

29.     The ISO also created a new "amendatory endorsement" to exclude loss due to virus or bacteria from coverage afforded by certain insurance policies. The ISO amendatory endorsement states that there is "no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion").

30.     Some insurers added the Virus Exclusion to their policies that provide Business Income (also referred to as "business interruption") coverage. Cincinnati's Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, however, do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases.

31.     In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds sustain during the "period of restoration" that the insureds would not has sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

32.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

6

33.     Defendant also agreed to "pay for the actual loss of 'Business Income'" sustained "and necessary Extra Expense" sustained "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage…."

34.     Defendant also agreed to pay for losses caused by the prevention of existing ingress or egress at the premises.  This is commonly known as "Ingress and Egress" coverage.

35.     Defendant's coverage forms, under sections titled "Duties in the Event of Loss," require in the event of a loss that the policy holder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This is commonly referred to as "Sue and Labor" coverage.  In this instance, Plaintiff was required to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on Plaintiff's premises.

36.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, Ingress and Egress and Sue and Labor provisions of Defendant's policies.

### COVID-19 and the Covered Cause of Loss

37.     Coronavirus (COVID-19) is a highly contagious virus that has rapidly spread and continues to spread across the United States.  It is a physical substance, human pathogen and can be present outside the human body in viral fluid particles.  According to the CDC, everyone is at risk of getting COVID-19.

7

38.     COVID-19 is spread by a number of methods, including "community spread," meaning that some people has been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

39.     The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a table, floor, wall, furniture, desk, countertop, touch screen or chair) that has the virus on it, and then touching their own mouth, nose or eyes.  COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

40.     More specifically, COVID-19 infections are spread through droplets of different sizes which can be deposited on surfaces or objects.

41.     In addition, The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations.  An April 2020 study published in the journal Emerging Infectious Diseases found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards.  This means there has been a finding of COVID-19 in the air.

42.     COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Missouri.

43.     COVID-19 has been transmitted by human to human contact and interaction with premises in Missouri.

44.     COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in Missouri.

45.     The presence of any COVID-19 particles renders items of physical property unsafe and the premises unsafe.

46.     The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.

47.     The presence of any COVID-19 particles causes direct physical harm, direct physical damage and direct physical loss to property.

48.     The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

49.     The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises unsafe, resulting in direct physical loss to the premises and property.

50.     Plaintiff's premises likely have been infected with COVID-19 and it has suffered direct physical loss to the property.  The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed.  It is likely customers, employees and/or other visitors to the insured property over the last two plus months were infected with COVID-19 and thereby infected the insured property with COVID-19.

51.     To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

52.     COVID-19 has been declared a pandemic by the World Health Organization.

53.     The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize hair salons, barber shops and other establishments.

54.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's businesses (the "Closure Orders").

## The Missouri Closure Orders

55.     On March 16, 2020, Ken McClure, the Mayor of the City of Springfield, Missouri, issued a proclamation declaring a local state of civil emergency, stating that the continued spread of COVID-19 presents an imminent threat of widespread illness and a threat to public health. The proclamation was issued under Section 78-132 of the Springfield City Code in order to protect the citizens of Springfield, Missouri and their property.

56.     On March 17, 2020, Mayor McClure issued a civil authority order stating in pertinent part that the COVID-19 virus is spread person to person through direct or proximate contact and presents an imminent threat to public health and, as of March 16, 2020, three people had tested positive for COVID-19 in Greene County, Missouri. Mayor McClure's March 17, 2020 order limited public gatherings of 10 or more persons except in designated activities. The purpose of the order was to mitigate and slow the spread of COVID-19 in the community.

57.     On March 21, 2020, the Governor of the State of Missouri issued a civil authority order limiting social gatherings of more than 10 people. That order went into effect on March 23, 2020. The purpose of the order was to mitigate and slow the spread of COVID-19 in the state.

58.     On March 24, 2020, Mayor McClure issued a Second Proclamation of Civil Emergency. On this date, he also provided notice of a civil authority order requiring all individuals

to stay at home unless performing "essential activities," and ordered all businesses to cease all in-person operations unless declared an "essential business." The order required hair salons and all other businesses that provide personal services to suspend operations. The order was to take effect at 12:01 a.m. on March 26, 2020 and expire in 30 days. The purpose of the order was to mitigate and slow the spread of COVID-19 in the community.

59.    The March 24, 2020 proclamation and March 26, 2020 order were issued under Section 78-132 of the Springfield City Code in order to protect the citizens of Springfield, Missouri and their property.

60.    Plaintiff's business did not and does not qualify as Essential Businesses and was required to cease and/or significantly reduce operations at all its locations.

61.    On April 3, 2020, the State of Missouri entered an order directing all residents in Missouri to stay at home, imposing social distancing rules, limiting occupancy of buildings, and reiterated that any entity that does not employ individuals to perform essential worker functions as set forth in guidance provided by the U.S Department of Homeland Security, Cybersecurity & Infrastructure Security Agency (CISA) shall adhere to limitations on social gatherings and social distancing set forth in the Order. This order went into effect at 12:01 AM on April 6, 2020 and was to remain in force until 11:59 PM on April 24, 2020. The purpose of the order was to mitigate and slow the spread of COVID-19 in the state.

62.    On April 6, 2020, Mayor McClure with the City of Springfield amended the Second Proclamation of Civil Emergency to include the provisions of the State of Missouri's April 3, 2020 order.

63.    On April 16, 2020, the State of Missouri amended the April 3, 2020 order and extended its enforcement to 11:59 PM on May 3, 2020. The purpose of the order was to mitigate

and slow the spread of COVID-19 in the state.

64.     On April 21, 2020, Mayor McClure amended the March 26, 2020 order and extended its enforcement to 11:59 p.m. on May 3, 2020.  The purpose of the order was to mitigate and slow the spread of COVID-19 in the community.

65.     The Missouri Closure Orders were issued in response to the rapid spread of COVID-19 throughout Missouri and are civil authority orders requiring the suspension of Plaintiff's businesses.

66.     As a response to COVID-19 and the Pandemic, the Governor of Missouri and Mayor of the City of Springfield, Missouri have issued these orders pursuant to the authority vested in them by the Missouri Constitution, the laws of Missouri and the ordinances of the City of Springfield, Missouri.

67.     Similarly, the Missouri Department of Health, pursuant to its authority under Missouri law, has issued orders, including a Stay at Home Order.

68.     The State of Missouri is a civil authority contemplated by Defendant's policy.

69.     The City of Springfield, Missouri is a civil authority contemplated by Defendant's policy.

70.     The Governor of the State of Missouri is a civil authority contemplated by Defendant's policy.

71.     The Mayor of Springfield, Missouri is a civil authority contemplated by Defendant's policy.

**The Impact of COVID-19 and the Closure Orders**

72.     Loss of use of property that has not been physically altered constitutes "physical loss or damage" for purposes of first-party property insurance.

12

73.     As the drafter of the policies, if Cincinnati had wished to exclude from coverage as "physical loss or damage" loss of use of property that has not been physically altered or deformed, it could have used explicit language stating such a definition, but it did not do so.

74.     The presence of COVID-19 caused direct physical loss of or damage to the covered property or "premises" under the Plaintiff's policy, and the policies of the other Class members, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

75.     The Closure Orders prohibited access to and use of Plaintiff's and the other Class members' Covered Property, and the area immediately surrounding damaged property, in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.

76.     The State of Missouri, through the Governor and Department of Health, and the City of Springfield, Missouri, through the Mayor, have issued and continue to issue authoritative orders governing Missourians and Missouri businesses, including the Plaintiff's business, in response to COVID-19 and the Pandemic, the effect of which have required and continue to require Plaintiff to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the policy.

77.     State and local governmental authorities and public health officials around the United States acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property.  For example: (a) The State of Colorado issued a Public Health Order indicating that "COVID-19…physically contributes to property loss, contamination and damage…" (b) The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus physically is causing property loss and

damage." (c) Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "is physically causing property damage." (d) the State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression…remains a public disaster affecting life, health [and] property." (e) The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to physically impact surfaces and personal property." (f) the City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for a prolonged period of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances." (g) the State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "property." (h) North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives" but also to "assure adequate protection of…property." (i) The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time; and (j) The City of Kansas City, Missouri issued a Proclamation in response to COVID-19 "to protect life and property".

78.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the other Class members lost Business Income and incurred Extra Expense.

## Plaintiff Submitted Notices of Loss to Cincinnati and was Wrongfully Denied Coverage

79.     Plaintiff submitted notices of loss to Cincinnati under the policy due to the presence of COVID-19 and the Closure Orders, and Cincinnati denied those claims by letter dated April 16, 2020.

14

80.     Upon information and belief, Cincinnati is using a form denial letter to deny coverage to all its insureds with policies similar to Plaintiff and is otherwise uniformly refusing to pay insureds under its standard policy for losses related to COVID-19.

## V.     CLASS ACTION ALLEGATIONS

81.     Plaintiff brings this action, individually and on behalf of all others similarly situated, pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4), of the Federal Rules of Civil Procedure.

82.     Plaintiff seek to represent nationwide classes for business income coverage defined as:

> a.     All persons and entities with Business Income coverage under a property insurance policy issued by Cincinnati that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

> b.     All persons and entities that: had Business Income coverage under a property insurance policy issued by Cincinnati; suffered a suspension of business related to COVID-19, at the premises covered by their Cincinnati property insurance policy; made a claim under their property insurance policy issued by Cincinnati; and were denied Business Income coverage by Cincinnati for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

83.     Plaintiff seek to represent nationwide classes for extra expense coverage defined as:

> a.     All persons and entities with Extra Expense coverage under a property

15

insurance policy issued by Cincinnati that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Cincinnati property insurance policy (the "Extra Expense Declaratory Judgment Class").

b.    All persons and entities that: had Extra Expense coverage under a property insurance policy issued by Cincinnati; sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Cincinnati property insurance policy; made a claim under their property insurance policy issued by Cincinnati; and were denied Extra Expense coverage by Cincinnati despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

84.    Plaintiff seek to represent nationwide classes for civil authority coverage defined as:

a.    All persons and entities with Civil Authority coverage under a property insurance policy issued by Cincinnati that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

b.    All persons and entities that: had Civil Authority coverage under a property insurance policy issued by Cincinnati; suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; made a claim under their property insurance policy issued by Cincinnati; and were denied Civil Authority coverage by Cincinnati for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority

16

Breach Class").

85.     Plaintiff seek to represent nationwide classes for sue and labor coverage defined as:

a.     All persons and entities with a Sue and Labor provision under a property insurance policy issued by Cincinnati that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy (the "Sue and Labor Declaratory Judgment Class").

b.     All persons and entities that: had a Sue and Labor provision under a property insurance policy issued by Cincinnati; sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy; made a claim under their property insurance policy issued by Cincinnati; and were denied Sue and Labor coverage by Cincinnati in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

86.     Plaintiff seek to represent nationwide classes for ingress and egress coverage defined as:

a.     All persons and entities with an Ingress and Egress provision under a property insurance policy issued by Cincinnati that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy (the "Ingress and Egress Declaratory Judgment Class").

17

b.    All persons and entities that: had an Ingress and Egress provision under a property insurance policy issued by Cincinnati; sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy; made a claim under their property insurance policy issued by Cincinnati; and were denied Sue and Labor coverage by Cincinnati in connection with the suspension of business caused by COVID-19 (the "Ingress and Egress Breach Class").

87.    Plaintiff seeks to represent a Missouri subclass, or all policyholders who purchased one of Defendant's policies in Missouri and was denied coverage due to COVID-19.

88.    Excluded from each defined Class are Cincinnati and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during this litigation.

89.    This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1).**

90.    The members of each defined Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Cincinnati's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

91.     This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

a.      Cincinnati issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class members;

b.      whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.      whether Cincinnati wrongfully denied all claims based on COVID-19;

d.      whether Cincinnati's Business Income coverage applies to a suspension of business caused by COVID-19 and/or the Stay at Home Orders;

e.      whether Cincinnati's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19 and/or the Stay at Home Orders;

f.      whether Cincinnati's Civil Authority coverage applies to a loss of Business Income and Extra Expense sustained caused by the orders of state governors and/or mayors requiring the suspension of businesses as a result of COVID-19 and/or the Stay at Home Orders;

g.      whether Cincinnati's Sue and Labor provision applies to require Cincinnati to pay for efforts to reduce damage caused by COVID-19 and/or the Stay at Home Orders;

h.      whether Cincinnati's Ingress and Egress provision applies to required Cincinnati to pay for losses caused by the inability to access the premises caused by COVID-19 and/or the Stay at Home Orders;

i.   whether Cincinnati has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss related to COVID-19 and the related closures; and

j.   whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

92.   Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Cincinnati's refusal to pay under its Business Income, Extra Expense, Civil Authority, Ingress and Egress and Sue and Labor coverages.  Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Cincinnati engaged.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**

93.   Plaintiff is an adequate Class and Missouri subclass representative because it is a member of the class, its interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and its counsel.

**Inconsistent Adjudications and Impediments to Others—Federal Rule of Civil Procedure 23(b)(1).**

94.   Plaintiff seek class-wide adjudication as to the interpretation, and resultant scope, of Cincinnati's Business Income, Extra Expense, Civil Authority, Ingress and Egress, and Sue and

Labor coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Cincinnati. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**

95.     Cincinnati acted or refused to act (or intends to refuse) on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

**Superiority—Federal Rule of Civil Procedure 23(b)(3).**

96.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  Defendant has acted or refused to act on grounds generally applicable to the class and Missouri subclass. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**Issue Class and Modification of Class Definitions and Creation of Subclasses**

97.     In the alternative, Plaintiff reserves the right to seek certification of one or more common issues pursuant to Rule 23(c)(4).  In addition, Plaintiff reserves the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the

21

following policy provisions: Business Income, Civil Authority, Extra Expense, Ingress and Egress and/or Sue and Labor and/or other subclasses that may be appropriate or necessary.

## VI. LEGAL CLAIMS FOR RELIEF

### COUNT I – Declaratory Judgment – Business Income Coverage
### (Brought on behalf of the Business Income Declaratory Judgment Class)

98.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

99.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class and Missouri Subclass.

100.     The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

101.     Plaintiff's Cincinnati policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Cincinnati was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

102.     Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions has been waived by Cincinnati, or Cincinnati is estopped from asserting them, and yet Cincinnati has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class members are entitled.

103.     Cincinnati has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class has filed a claim.

22

104.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class members' rights and Cincinnati's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

105.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.       Plaintiff and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure or Stay at Home Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies;

b.       Cincinnati is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic; and

c.       Plaintiff further seeks an injection enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Business Income coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

**COUNT II – Breach of Contract – Business Income Coverage**
**(Brought on behalf of the Business Income Breach Class)**

106.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

23

107.    Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class and Missouri Subclass.

108.    Plaintiff's Cincinnati policies, as well as those of the other Business Income Breach Class members, are contracts under which Cincinnati were paid premiums in exchange for their promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims covered by the policy.

109.    In the Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form, Cincinnati agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

110.    A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Cincinnati agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct loss.

111.    "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

112.    COVID-19 caused direct physical loss of or damage to Plaintiff's and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' Cincinnati policies.

113.    Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance

coverage obligations pursuant to the policies' clear and unambiguous terms.

114.    By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

115.    As a result of Defendant's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

### COUNT III – Declaratory Judgment – Extra Expense Coverage
### (Brought on behalf of the Extra Expense Declaratory Judgment Class)

116.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

117.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class and Missouri Subclass.

118.    The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

119.    Plaintiff' Cincinnati insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

120.    Plaintiff and the other Extra Expense Declaratory Judgment Class members has complied with all applicable provisions of the policies and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

121.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class has filed a claim.

122.     An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

123.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      a.     Plaintiff and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies;

      b.     Defendant is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic; and

      c.     Plaintiff further seeks an injection enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Extra Expense coverage form and ordering Defendant to comply

26

with the terms of the policies in regards to coverage decisions.

**COUNT IV – Breach of Contract – Extra Expense Coverage**
**(Brought on behalf of the Extra Expense Breach Class)**

124. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

125. Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class and Missouri Subclass.

126. Plaintiff' Cincinnati insurance policies, as well as those of the other Extra Expense Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Breach Class members' losses for claims covered by the policy.

127. In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not has sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

128. "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

129. Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property Plaintiff and the other members of the Extra Expense Breach Class has complied with all applicable provisions of the policies and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

130. By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the

COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

131. As a result of Defendant's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT V – Declaratory Judgment – Civil Authority Coverage
## (Brought on behalf of the Civil Authority Declaratory Judgment Class)

132. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

133. Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class and Missouri Subclass.

134. The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

135. Plaintiff's Cincinnati insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

136. Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

137. Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class has filed a claim.

138.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

139.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.     Plaintiff and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies;

b.     Defendant is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic; and

c.     Plaintiff further seeks an injection enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Civil Authority coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

**COUNT VI – Breach of Contract – Civil Authority Coverage**
**(Brought on behalf of the Civil Authority Breach Class)**

140.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

141.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class and Missouri Subclass.

142.    Plaintiff's Cincinnati insurance policies, as well as those of the other Civil Authority Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Breach Class members' losses for claims covered by the policy.

143.    Defendant agreed to "pay for the actual loss of 'Business Income'" sustained "and necessary Extra Expense" sustained "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage…."

144.    The Closure Orders triggered the Civil Authority provision under Plaintiff and the other members of the Civil Authority Breach Class's Cincinnati insurance policies.

145.    Plaintiff and the other members of the Civil Authority Breach Class has complied with all applicable provisions of the policies, and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

146.    By denying coverage for any business losses incurred and extra expenses sustained by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

147.    As a result of Defendant's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

**COUNT VII – Declaratory Judgment – Sue and Labor Coverage**
**(Brought on behalf of the Sue and Labor Declaratory Judgment Class)**

148.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

149.    Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Declaratory Judgment Class and Missouri Subclass.

150.    The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

151.    Plaintiff's Cincinnati insurance policy, as well as those of the other Sue and Labor Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

152.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members has complied with all applicable provisions of the policies and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

153.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class has filed a claim.

154.    An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and Defendant's obligations under the policies to

31

reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

155.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      a.      Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

      b.      Defendant is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

      c.      Plaintiff further seeks an injection enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Sue and Labor coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

**COUNT VIII – Breach of Contract – Sue and Labor Coverage**
**(Brought on behalf of the Sue and Labor Breach Class)**

156.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

157.    Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class and Missouri Subclass.

158.    Plaintiff's Cincinnati policies, as well as those of the other Sue and Labor Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Breach Class members' losses for claims

32

covered by the policy.

159.    In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

160.    In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

161.    Plaintiff and the other members of the Sue and Labor Breach Class has complied with all applicable provisions of the policy and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

162.    By denying coverage for any Sue and Labor expenses incurred by Plaintiff and the other members of the Sue and Labor Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

163.    As a result of Defendant's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

### COUNT IX – Declaratory Judgment – Sue and Labor Coverage
### (Brought on behalf of the Ingress and Egress Declaratory Judgment Class)

164.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

165.    Plaintiff brings this Count individually and on behalf of the other members of the Ingress and Egress Declaratory Judgment Class and Missouri Subclass.

166.    The Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, allows this Court to

declare the rights and other legal relations of the parties to this dispute.

167.    Plaintiff's Cincinnati insurance policy, as well as those of the other Ingress and Egress Declaratory Judgment Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Ingress and Egress Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

168.    Plaintiff and the other Ingress and Egress Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff is entitled.

169.    Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class has filed a claim.

170.    An actual case or controversy exists regarding Plaintiff and the other Ingress and Egress Declaratory Judgment Class members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Ingress and Egress Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Ingress and Egress Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

171.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Ingress and Egress Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

        a.    Plaintiff and the other Ingress and Egress Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from

further damage by COVID-19 are insured losses under their policies; and

    b.    Defendant is obligated to pay Plaintiff and the other Ingress and Egress Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

    c.    Plaintiff further seeks an injection enjoining Defendant from continuing to engage in conduct in breach of its policies in regards to coverage decisions under the Ingress and Egress coverage form and ordering Defendant to comply with the terms of the policies in regards to coverage decisions.

### COUNT X – Breach of Contract – Ingress and Egress Coverage
### (Brought on behalf of the Ingress and Egress Breach Class)

172.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

173.    Plaintiff brings this Count individually and on behalf of the other members of the Ingress and Egress Breach Class and Missouri Subclass.

174.    Plaintiff's Cincinnati policies, as well as those of the other Ingress and Egress Breach Class members, are contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff and the other Ingress and Egress Breach Class members' losses for claims covered by the policy.

175.    In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, Defendant agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

176.    In complying with the Closure Orders and otherwise suspending or limiting operations, Plaintiff and other members of the Ingress and Egress Breach Class incurred expenses

35

in connection with reasonable steps to protect Covered Property.

177.     Plaintiff and the other members of the Ingress and Egress Breach Class have complied with all applicable provisions of the policy and/or those provisions has been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

178.     By denying coverage for any Ingress and Egress expenses incurred by Plaintiff and the other members of the Ingress and Egress Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the policies.

179.     As a result of Defendant's breaches of the policies, Plaintiff and the other members of the Ingress and Egress Breach Class has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## VII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class and/or Subclass members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a.     That the Court enter an order certifying the classes, appointing Plaintiff as a representative of the classes, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b.     For a judgment against Defendant for the causes of action alleged against it;

c.     For compensatory damages in an amount to be proven at trial;

d.     For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the policy;

e.      For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the policy;

f.      For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g.      For Plaintiff's attorneys' fees;

h.      For Plaintiff's costs incurred; and

i.      For such other and further relief as the Court deems just and proper.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demand a trial by jury on all matters so triable.

Dated: April 27, 2020                    Respectfully submitted by:

BOULWARE LAW LLC

 /s/ *Brandon J.B. Boulware*
Brandon J.B. Boulware        MO # 54150
1600 Genessee Street, Suite 416
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:    (816) 492-2826
brandon@boulware-law.com


VOTAVA NANTZ & JOHNSON, LLC

BY:  */s/ Todd Johnson*
TODD JOHNSON        MO #48824
9237 Ward Parkway, Suite 240
Kansas City, MO 64114
Tele:   (816) 895-8800
Fax:    (816) 895-8801
tjohnson@vnjlaw.com

***Attorneys for Plaintiff***

37