IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STUDIO 417, INC., | ) | |
| GRAND STREET DINING, LLC, | ) | |
| GSD LENEXA, LLC, | ) | |
| TREZOMARE OPERATING COMPANY, | ) | |
| LLC, and V's RESTAURANT, INC., | ) | |
| Each individually and on behalf of all | ) | |
| others similarly situated | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 6:20-CV-03127 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT THE CINCINNATI INSURANCE COMPANY'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS

WALLACE SAUNDERS, P.C.
Michael L. Brown        MO 55732
Kelvin J. Fisher        MO 56573
10111 West 87th Street
Overland Park, KS 66212
(913) 888-1000 FAX - (913) 888-1065
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com

LITCHFIELD CAVO LLP
Daniel Litchfield    *PHV pending*
Ericka Hammett       *PHV*
303 West Madison Street
Suite 300
Chicago, IL 60606
(312) 781-6669 FAX (312) 781-6630
litchfield@litchfieldcavo.com
hammett@litchfieldcavo.com

ATTORNEYS FOR DEFENDANT THE
CINCINNATI INSURANCE COMPANY

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................... iii

OVERVIEW AND SUMMARY OF ARGUMENT ...........…………………….. 1

STATEMENT OF FACTS
………………………………………………... 2

I.      Allegations of the Complaint ……………………………………… 2

II.     The Plaintiffs' Policies ……………………………………….. 7

        A.      The Insurance Policies At Issue ………………………….. 7

        B.      The Policies' Direct Physical Loss Requirement ……….. 9

        C.      Additional Requirements for Coverage
                Under the Policies ……………………………………… 10

ARGUMENT

I.      Motion to Dismiss Standard …………………………………… 11

II.     There Is No Direct Physical Loss and Accordingly There Is No
        Coverage ……………………………………………………… 13

        A.      There Are No Facts To Show Plaintiffs' Property Was
                Physically Altered, Thus There Is No Physical Loss ……. 13

        B.      American Case Law Is Overwhelmingly Consistent
                With *Source Food*, *Pentair* and *Great Plains Ventures*
                ……………………………………………………… 17

        C.      Coronavirus Does Not Affect the Structural Integrity
                of Property; It Can Be Removed by Cleaning ………….. 18

        D.      The Lack of a Virus Exclusion Is Irrelevant Because
                There Is No Direct Physical Loss ………………………… 19

III.    There Is No Civil Authority Coverage ……………………………… 20

        A.      There is No Direct Physical Loss to Other Property ……. 21

        B.      The Requisite Prohibition of Access Is Lacking …………. 22

Case 6:20-cv-03127-SRB   Document 21   Filed 06/22/20   Page 2 of 33

**IV.**   **There Is No Ingress and Egress Coverage** …………………………….   **24**

**V.**   **There Is No Dependent Property Coverage** …………………………...   **24**

**VI.**   **There Is No So-Called Sue and Labor Coverage** ………………………..   **25**

**CONCLUSION** ……………………………………………………………   **26**

**CERTIFICATE OF SERVICE** ……………………………………………...   **27**

# **TABLE OF AUTHORITIES**

## **Cases**

*Bros., Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 614 (D.C. 1970)....................................23

*Cowin v. Shelter Mut. Ins. Co.*, 460 S.W.3d 76, 81 (Mo. Ct. App. 2015) ....................................13

*Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260,
264 (D. Mass. 2004)....................................................................................................................17

*Depositors Ins. Co. v. Dollansky,* 905 N.W.2d 513, 515 (Minn. Ct. App. 2017), aff'd, 919
N.W.2d 684 (Minn. 2018)...........................................................................................................15

*Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, 880 F.3d 1007, 1009 (8th Cir. 2018) ...........10

*Expl. Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 905–06, 89 P.3d 536, 541 (2004) ......10

*Geer v. Eby*, 309 Kan. 182, 192, 432 P.3d 1001, 1009 (2019) ....................................................13

*Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019)..............................................12

*Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, 12 (N.Y. Sup. Ct. Apr. 05, 2016)...............23

*Granite Re, Inc. v. Nat'l Credit Union Admin. Bd.*, 956 F.3d 1041, 1044 (8th Cir. 2020)...........12

*Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970,
976 & 979 (D. Kan. 2016) ..............................................................................................15, 17, 21

*Hawkeye-Sec. Ins. Co. v. Davis*, 6 S.W.3d 419, 427 (Mo. Ct. App. 1999) .................................10

*Johnson v. Studyvin*, 828 F. Supp. 877, 881 (D. Kan. 1993) (Kansas law) .................................10

*Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) ...........................................................17

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8
(D.S.C. Feb. 24, 2020) ................................................................................................................21

*Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ...........18

*Mastellone v. Lightning Rod Mut. Ins. Co.,* 2008-Ohio-311, ¶ 61, 175 Ohio App.
3d 23, 40, 884 N.E.2d 1130, 1143 .....................................................................................17, 18, 19

*Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 842–43 (Mo. Ct. App. 2019)...............................15

*Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931, n. 3 (8th Cir. 2012).....................12

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d
323, 333 (S.D.N.Y. 2014) ............................................................................................................20

iv

*Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6
(E.D. Tex. Mar. 30, 2011) ............................................................... 21

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005) ............. 14, 15, 17

*Philadelphia Parking Auth. v. Fed. Ins. Co.,* 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) ........... 17

*Rias v. Safeco Ins. Co. of Am.*, 594 F. Supp. 2d 1090, 1095 (E.D. Mo. 2009) .............................. 7

*Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002) ........ 20

*S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex.
Feb. 15, 2008) ............................................................................. 21

*Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of America*, 2015 WL 13547667, 6
(N.J. Super. L. July 24, 2015) ............................................................ 23

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, 4 (M.D. Pa.
July 6, 2010) ................................................................................ 22

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.) ............... 17

*Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.,* 465 F.3d 834 (8th Cir. 2006) ................ *passim*

*Southern Hospitality, Inc., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) ............. 22

*Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) ............................................. 11

*Stutzka v. McCarville*, 420 F.3d 757, 760, n. 2 (8th Cir. 2005) ................................................. 3, 19

*Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, 2
(N.D. Cal. Mar. 21, 1995) ............................................................... 23

*TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, 4 (Minn. Ct. App.
June 7, 2005) ............................................................................... 23

*United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006) ................... 21

*Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 710 (E.D. Mich. 2010) ........ 18

*Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014) ............................................. 12

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 555,
7 Cal. Rptr. 3d 844, 850 (2003) ...................................................... 20

*Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ............................................... 12

*Zinser v. Auto-Owners Ins. Co.,* 2017-Ohio-5668, ¶ 33 (Ohio App.) ......................................... 20

v

**Other Authorities**

10A *Couch on Ins.* § 148:46 ............................................................................. 13, 17, 18

11A *Couch on Ins.* § 167:15 ........................................................................................ 20

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
        § 1327 & n. 22 (4th ed.) (Wright & Miller) .......................................... 12

CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020) ........................................ 19

CDC, *Cleaning and Disinfection for Households* .......................................................... 19

**Rules**

Fed.R.Civ.P. 12(b)(6) ...................................................................................................... 1

L.R. 7.0 ............................................................................................................................... 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

STUDIO 417, INC.,                 )
GRAND STREET DINING, LLC,   )
GSD LENEXA, LLC,             )
TREZOMARE OPERATING COMPANY, )
LLC, and V's RESTAURANT, INC.,    )
Each individually and on behalf of all   )
others similarly situated          )
                         )
      Plaintiffs,          )    CASE NO. 6:20-CV-03127
                         )
      vs.              )
                         )
THE CINCINNATI INSURANCE    )
COMPANY,                 )
                         )
      Defendant.      )

**DEFENDANT THE CINCINNATI INSURANCE COMPANY'S
SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to Fed.R.Civ.P. 12(b)(6) and L.R. 7.0, The Cincinnati Insurance Company ("Cincinnati") moves to dismiss this case because the Plaintiffs fail to state a claim on which relief may be granted. Based on the allegations of the First Amended Class Action Complaint ("the Complaint") and the language of Cincinnati's insurance policies ("the Policies"), Plaintiffs cannot prove their claims.

**OVERVIEW AND SUMMARY OF ARGUMENT**

The Policies at issue supply property insurance coverage. They are designed to indemnify loss or damage to property, such as in the case of a fire or storm. Coronavirus (or "COVID-19") does not damage property; it hurts people. Plaintiffs demand the Policies' Business Income, Extra Expense, Civil Authority, Extended Business Income, Ingress and Egress, Dependent Property, and so-called Sue and Labor coverages. But, because they are part of a property insurance policy,

1

these coverages protect Plaintiffs only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease. The Plaintiffs' allegations establish that they have not sustained any losses attributable to direct physical loss to property. Rather, Plaintiffs allege that the Coronavirus pandemic spreads COVID-19 among humans. Moreover, the same direct physical loss requirement applies to all the coverages for which Plaintiffs sue. Thus, it applies to the Civil Authority coverage, Ingress and Egress coverage, and Dependent Property coverage.

At bottom, Plaintiffs bear the initial burden of showing actual direct physical loss to property. This is always necessary to make a *prima facia* case for property insurance coverage. Because Plaintiffs fail to allege direct physical loss, they ask for a vast extension of Missouri and Kansas insurance law[1] that would create coverage from whole cloth. This should not be permitted.

For all of these reasons, and for the other reasons established below, Plaintiffs' Complaint should be dismissed.

## STATEMENT OF FACTS

### I. Allegations of the Complaint

The Complaint includes the following allegations:

- For many years, Plaintiff Studio 417, Inc. has operated hair salons in the Springfield metropolitan area. (Complaint ("Compl.") at ¶ 2).

- For many years, Plaintiffs Grand Street Dining, LLC, GSD Lenexa, LLC, Trezomare Operating Company, LLC, and V's Restaurant, Inc. have owned and operated full-service fine dining restaurants in the Kansas City metropolitan area. Plaintiffs Grand Street Dining, LLC, GSD Lenexa, LLC, Trezomare Operating Company, LLC, and V's Restaurant, Inc.'s restaurants also provide catering services and wedding and event space. (Compl. at ¶ 3)

---

[1] As will be discussed, Kansas law may apply to one of the policies at issue here. For that reason, Cincinnati shows that there is no coverage under either Missouri or Kansas law.

- Plaintiffs' operations have been and continue to be suspended and threatened by the novel coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19. (Compl. at ¶ 4).

- Plaintiffs were forced to suspend or reduce business at their covered premises due to COVID-19 and the ensuing orders issued by civil authorities in Missouri and Kansas, mandating the suspension of business for on-site services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations. (Compl. at ¶ 14).[2]

- . . . . Cincinnati issued Policy No. ECP0504158 to Plaintiff Studio 417, for a policy period of September 18 [*sic*], 2018 to September 18 [*sic*], 2021,[3] including a Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form ["the Studio 417 Policy"]. . . . The Covered Propert[ies] . . . are hair salons located [in] . . . Springfield, Missouri. (Compl. at ¶ 20).[4]

- . . . . Cincinnati issued Policy No. ECP0515325 to Grand Street, for a policy period of December 5, 2018 to December 5, 2021, including a Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form ["the Grand Street Policy"] . . . . The Covered Propert[ies] . . . [are] the Grand Street Cafe restaurants located [in] . . . Kansas City, Missouri . . . and Lenexa, Kansas . . . . (Compl. at ¶ 21).

- . . . . Cincinnati issued Policy No. ECP0443843 to Trezomare for a policy period of July 1, 2017 to July 1, 2020, including a Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form ["the Trezomare Policy"] . . . . The Covered Property . . . is the Trezo Mare restaurant located [in] . . . Kansas City, Missouri . . . . (Compl. at ¶ 22)

- . . . . Cincinnati issued Policy No. ECP0477874 to V's Restaurant for a policy period of March 1, 2018 to March 1, 2021, including a Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form ["the V's Restaurant Policy"] . . . . The Covered Property . . . is the V's Italiano Ristorante located [in] . . . Independence, Missouri 64055. (Compl. at ¶ 23).[5]

---

[2] Plaintiffs did not attach copies of the Closure Orders to the Complaint. However, the Court may take judicial notice of those orders and other matters of public record. *Stutzka v. McCarville*, 420 F.3d 757, 760, n. 2 (8th Cir. 2005).

[3] A copy of the Studio 417 Policy was attached as Exhibit 1 to the original complaint. It shows the correct policy period is September 8, 2018 to September 8, 2021. (*See* Dkt. 1-1, Studio 417 Policy, p. 2).

[4] Grand Street and Trezomare originally filed their own class action lawsuit against Cincinnati in this Court, Case No. 20-cv-330 (filed Apr. 23, 2020). The matter was assigned to the Hon. Brian C. Wimes. On May 27, 2020, Grand Street and Trezomare voluntarily dismissed that action. Then, Studio 417 amended its complaint to add Grand Street and Trezomare, among others. This effectively transferred the Grand Street action to this action. Copies of the Grand Street Policy and the Trezomare Policy were attached to the now-dismissed Complaint in Case No. 20-cv-330 as Exhibits A and B (Dkt. No. 1-2 & 1-3), respectively and are attached as Exhibits A and B to this Brief accordingly.

[5] Plaintiffs failed to file a copy of the V's Restaurant Policy. Accordingly, a certified copy of that policy is included as Exhibit C to this brief.

- Under the heading "Covered Causes of Loss," Defendant agreed to pay for "direct 'loss' unless the 'loss' is excluded or limited" in the policies. (Compl. at ¶ 27).

- Defendant did not exclude or limit coverage for losses from viruses in Plaintiffs' policies or those of the other Class members. The policies also did not exclude pandemic coverage, communicable disease coverage or anything similar. (Compl. at ¶ 28).

- "Loss" is defined to mean accidental physical loss or accidental physical damage. (Compl. at ¶ 31).

- "Suspension" is defined to mean the slowdown or cessation of business activities *and that part or all of the covered premises is rendered untenable*. (Compl. at ¶ 32) (emphasis added).[6]

- The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a table, floor, wall, furniture, desk, countertop, touch screen or chair) that has the virus on it, and then touching their own mouth, nose or eyes. COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces. (Compl. at ¶ 49).

- In addition, The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. An April 2020 study published in the journal Emerging Infectious Diseases found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards. This means there has been a finding of COVID-19 in the air. (Compl. at ¶ 51).

- The presence of any COVID-19 particles renders items of physical property unsafe and the premises unsafe. (Compl. at ¶ 55).

- The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function. (Compl. at ¶ 56).

- The presence of any COVID-19 particles causes direct physical harm, direct physical damage and direct physical loss to property. (Compl. at ¶ 57).

---

[6] No facts alleged in the Complaint show the premises was untenantable. But, even if it were, the Complaint fails as a matter of law because it does not allege physical loss to property caused by the Coronavirus, or otherwise.

4

- The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property. (Compl. at ¶ 58).

- The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises unsafe, resulting in direct physical loss to the premises and property. (Compl. at ¶ 59).

- Plaintiffs' premises likely have been infected with COVID-19 and they have suffered direct physical loss to their property. The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020—weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees and/or other visitors to the insured properties over the last several months were infected with COVID-19 and thereby infected the insured properties with COVID-19. (Compl. at ¶ 60).

- To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces. (Compl. at ¶ 61).

- The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses (the "Closure Orders"). (Compl. at ¶ 64).[7]

- Loss of use of property *that has not been physically altered* constitutes "physical loss or damage" for purposes of first-party property insurance. (Compl. at ¶ 100) (emphasis added).

- The presence of COVID-19 caused direct physical loss of or damage to the covered property or "premises" under the Plaintiffs' policies, and the policies of the other Class members, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration. (Compl. at ¶ 102).

- The Closure Orders prohibited access to and use of Plaintiffs' and the other Class members' Covered Property, and the area immediately surrounding damaged property, in response to dangerous physical conditions resulting from

---

[7] The Complaint purports to summarize the Missouri and Kansas Closure Orders. For brevity, Cincinnati does not reproduce those allegations. However, as pertinent to this Motion, the Complaint alleges that under the Closure Orders, restaurants were permitted to provide drive-thru, curbside pickup and delivery services. (*See* Compl. at ¶¶ 73, 76, 78-80 & 93).

the damage or continuation of the Covered Cause of Loss that caused the damage. (Compl. at ¶ 103).

- The presence of COVID-19 and the Closure Orders caused a direct loss to Plaintiffs' dependent property, which resulted in a loss of Business Income sustained. (Compl. at ¶ 104).

- The presence of COVID-19 and the Closure Orders caused a direct loss to locations contiguous to Plaintiffs' premises, which prevented existing ingress and/or egress at Plaintiffs' premises and caused a loss of Business Income sustained and necessary Extra Expense incurred. (Compl. at ¶ 105).

- . . . . [Missouri's Closure Orders] have required and continue to require Plaintiffs to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in their policies. (Compl. at ¶ 106).

- . . . . [Kansas's Closure Orders] have required and continue to require Plaintiff Grand Street to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in their policy. (Compl. at ¶ 107).

- State and local governmental authorities and public health officials around the United States acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property. . . . (Compl. at ¶ 108).

The Complaint contains fourteen counts, all of which are based on contract interpretation: 1) Declaratory Judgment – Business Income Coverage; 2) Breach of Contract – Business Income Coverage; 3) Declaratory Judgment – Extra Expense Coverage; 4) Breach of Contract – Extra Expense Coverage; 5) Declaratory Judgment – Dependent Property Coverage; 6) Breach of Contract - Dependent Property Coverage; 7) Declaratory Judgment – Civil Authority Coverage; 8) Breach of Contract – Civil Authority Coverage; 9) Declaratory Judgment – Extended Business Income Coverage; 10) Breach of Contract – Extended Business Income Coverage; 11) Declaratory Judgment – Ingress and Egress Coverage; 12) Breach of Contract – Ingress and Egress Coverage; 13) Declaratory Judgment – Sue and Labor Coverage; 14) Breach of Contract – Sue and Labor Coverage.

The Complaint seeks class certification for fourteen nationwide classes (one for each cause of

6

action asserted in the Complaint) and a Missouri Subclass consisting of "all policyholders who purchased one of Defendant's policies in Missouri and were denied coverage due to COVID-19." (*See* Compl. at ¶¶ 118-125).[8]

## II. The Plaintiffs' Policies

### A. The Insurance Policies At Issue

Cincinnati issued Policy No. ECP 050 41 58 to STUDIO 41, INC DBA STUDIO 417 SALON; 417 BLOW DRY BAR for the policy period September 8, 2018 to September 8, 2021. (Studio 417 Policy, p. 2).[9] Cincinnati issued the Studio 417 Policy to Studio 417 in Missouri through a Missouri insurance agency. (Studio 417 Policy, p. 2). The Studio 417 Policy insures Studio 417's three salon premises, each of which is located in Missouri. (Studio 417 Policy, p. 5).

Cincinnati issued Policy No. ECP 051 53 25 to GRAND STREET DINING LLC, DBA GRAND STREET CAFE; GSD LENEXA LLC (collectively, "Grand Street") for the policy period December 5, 2018 to December 5, 2021. (Grand Street Policy, p. 14). Cincinnati issued the Grand Street Policy to Grand Street in Kansas through a Kansas insurance agency. (Grand Street Policy, p. 14). The Grand Street Policy insures Grand Street Dining's cafe in Missouri and GSD Lenexa's cafe in Kansas.[10] (Grand Street Policy, p. 22)

Cincinnati also issued Policy No. ECP 044 38 43 to TREZOMARE OPERATING COMPANY, LLC, for the policy period July 1, 2017 to July 1, 2020. (Trezomare Policy, p. 10). Cincinnati issued the Trezomare Policy to Trezomare in Missouri through a Missouri insurance

---

[8] Cincinnati does not address Plaintiff's "Class Action Allegations" because the Complaint does not state a claim on which relief may be granted in the first instance. Cincinnati reserves the right to dispute the class allegations and to dispute class certification in the event this Court denies Cincinnati's Motion to Dismiss.

[9] Citations to page numbers of the Studio 417, Grand Street, and Trezomare Policies refer to the ECF stamped page numbers in the footer of those documents.

[10] Under applicable choice of law rules, Kansas law may govern the interpretation of the Grand Street Policy, while Missouri law applies to the remaining Policies at issue. *See, e.g.*, *Rias v. Safeco Ins. Co. of Am.*, 594 F. Supp. 2d 1090, 1095 (E.D. Mo. 2009). However, as demonstrated in this brief, the laws of the State of Kansas and the State of Missouri are in accord on all pertinent issues.

7

agency. (Trezomare Policy, p. 10). The Trezomare Policy insures Trezomare's restaurant premises in Missouri. (Trezomare Policy, p. 14).

Finally, Cincinnati issued Policy No. ECP 047 78 74 to V's RESTAURANT INC. DBA V's RESTAURANT AND CREATIVE, for the policy period March 1, 2018 to March 1, 2021 (V's Restaurant Policy, p. 2).[11] Cincinnati issued the V's Restaurant Policy to V's Restaurant in Missouri through a Missouri insurance agency. (V's Restaurant Policy, p. 2). The V's Restaurant Policy insures V's Restaurant's restaurant premises in Missouri. (V's Restaurant Policy, p. 6).

For present purposes, the pertinent forms in each of the Policies are form FM 101 05 16 (Building and Personal Property Coverage Form), form FA 213 05 16 (Business Income (and Extra Expense) Coverage Form), and form FCP 201 05 16 (Commercial Property Amendatory Endorsement). (*See, e.g.*, Studio 417 Policy, pp. 20-59, 62-67 & 92-100).[12] The Building and Personal Property Coverage form, FM 101 05 16, is the main property coverage form. The Business Income (and Extra Expense) Coverage form, FA 213 05 16, focuses on business income and extra expenses. Using the same language, both forms supply Business Income and Extra Expense Coverage, but only if the necessary elements for coverage are satisfied. Both forms also contain the Extra Expense, Civil Authority, Extended Business Income coverages, and the so-called Sue and Labor coverage, all of which are put at issue by the Complaint. Only the Business Income Coverage form includes Ingress and Egress coverage.

Finally, the Amendatory Endorsement supplies Dependent Property coverage up to $10,000 per occurrence for each "dependent property." But, again, like the other coverages, the Dependent Property coverage requires direct physical loss and applies only if all of the elements

---

[11] Because the pertinent insuring provisions of each of the insurance policies at issue is identical, Cincinnati refers to those policies collectively as "the Policies."

[12] (*See also* Grand Street Policy, pp. 54-93, 96-101 & 142-150; Trezomare Policy, pp. 36-75, 78-83 & 105-113; V's Restaurant Policy, pp. 25-64, 67-72 & 99-107).

for coverage stated in that form are met. (*See*, *e.g.*, Studio 417 Policy, pp. 64-65).[13]

**B.    The Policies' Direct Physical Loss Requirement**

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiffs'. The requirement appears in multiple places. For example, direct physical loss to the Plaintiffs' property is required for Business Income coverage:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(*See, e.g.,* Studio 417 Policy, pp. 37-38 & 92). Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (*See, e.g.,* Studio 417 Policy, pp. 24 & 93). "Loss" is defined, in relevant part, as physical loss or damage. (*See, e.g.,* Studio 417 Policy, pp. 57 & 100).[14] Accordingly, there is no Covered Cause of Loss, and therefore no Business Income coverage, unless the insured first establishes, among other things, that there is direct physical loss to covered property.

Therefore, the requirement of direct physical loss applies to any coverage requiring a Covered Cause of Loss. A Covered Cause of Loss and thus direct physical loss, is an express requirement for coverage under each of the individual Extra Expense, Civil Authority, Extended Business Income, Ingress and Egress, Dependent Property, and so-called Sue and Labor coverages sought by Plaintiffs. (*See*, *e.g.*, Studio 417 Policy, pp. 38 & 92-93 (Extra Expense); pp. 38 & 93 (Civil Authority), pp. 39 & 94 (Extended Business Income); pp. 64-65 (Dependent Property), p.

---

[13] (*See also* Grand Street Policy, pp. 98-99; Trezomare Policy, pp. 80-81; V's Restaurant Policy, pp. 69-70).
[14] (*See also* Grand Street Policy, pp. 58, 71-72, 91, 142-143, 150; Trezomare Policy, pp. 40, 53-54, 73, 105-106, 113; V's Restaurant Policy, pp. 29, 42-43, 62, 99-100 & 107)

9

95 (Ingress and Egress), pp. 49-50 & 96 (Sue and Labor)).[15]

Furthermore, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is first direct physical loss. *Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, 880 F.3d 1007, 1009 (8th Cir. 2018) (Under Missouri law, "[i]t is the insured's burden to establish coverage under the policy and the insurer's burden to show that an exclusion to coverage applies."); *and see Expl. Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 905–06, 89 P.3d 536, 541 (2004) ("[T]he burden is on the insured to prove that a loss falls within the scope of an insurance policy. However, the burden of proving that an exclusionary provision applies to preclude coverage falls upon the insurer.") (Kansas law) (Internal citations omitted); *and see Hawkeye-Sec. Ins. Co. v. Davis*, 6 S.W.3d 419, 427 (Mo. Ct. App. 1999); *Johnson v. Studyvin*, 828 F. Supp. 877, 881 (D. Kan. 1993) (Kansas law).

### C.    Additional Requirements for Coverage Under the Policies

In addition to the direct physical loss requirement, Civil Authority coverage requires an actual loss of Business Income that an insured sustains if the loss is caused by an action of a civil authority. The coverage is only provided if both of the following apply:

**(a)**    *Access* to the area immediately surrounding the damaged property *is prohibited* by civil authority as a result of the damage; and

**(b)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the *Covered Cause of Loss* that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

---

[15] (*And see* Grand Street Policy, pp. 72 & 142-143 (Extra Expense); pp. 72 & 143 (Civil Authority), pp. 73 & 144 (Extended Business Income); pp. 98-99 (Dependent Property), p. 145 (Ingress and Egress), pp. 83-84 & 146 (Sue and Labor); Trezomare Policy, Policy, pp. 54 & 105-106 (Extra Expense); pp. 54 & 106 (Civil Authority), pp. 55 & 107 (Extended Business Income); pp. 80-81 (Dependent Property), p. 108 (Ingress and Egress), pp. 65-66 & 109 (Sue and Labor); V's Restaurant Policy, pp. 43 & 99-100 (Extra Expense); pp. 43 & 100 (Civil Authority); pp. 44 &101 (Extended Business Income; pp. 69-10 (Dependent Property); p. 102 (Ingress and Egress); and pp. 54-55 & 103 (Sue and Labor).

10

(*See*, *e.g.*, Studio 417 Policy, pp. 38 & 93) (emphasis added).[16] Accordingly, Civil Authority coverage requires, among other things, direct physical loss to property other than the insured's property and prohibition of access to the insured's property as a result of that direct physical loss.

Likewise, the Ingress and Egress coverage only applies if the insured sustains actual loss of Business Income and Extra Expense "caused by the prevention of existing ingress or egress at [an insured premises] due to direct 'loss' by a ***Covered Cause of Loss*** at a location ***contiguous to*** such 'premises'." (*See*, *e.g.*, Studio 417 Policy, p. 95) (emphasis added).[17] And, the Dependent Property coverage only applies if the insured sustains actual loss of Business Income due to suspension of its business "caused by direct 'loss' to '***dependent property***'." The direct loss to dependent property must in turn be "caused by or resulting from any ***Covered Cause of Loss***." (*See*, *e.g.*, Studio 417 Policy, pp. 63-65) (emphasis added).[18] Accordingly, these additional coverages require both a direct physical loss to contiguous or dependent property, and the prevention of access to the insured's property, or suspension of its business, as a result of that direct physical loss.

## ARGUMENT

### I. Motion to Dismiss Standard

Dismissal is an appropriate mechanism here because this motion presents a pure question of law and contract interpretation. A motion to dismiss for failure to state a claim should prevail if, after the complaint's allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond a doubt that the nonmoving party cannot prove facts supporting his claim. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

---

[16] (*And see*, Grand Street Policy, pp. 72 & 143; Trezomare Policy, pp. 54 & 106; V's Restaurant Policy, pp. 43 & 100)

[17] (*And see*, Grand Street Policy, p. 145; Trezomare Policy, p. 108; V's Restaurant Policy, p. 102)

[18] (*And see*, Grand Street Policy, pp. 97-99; Trezomare Policy, pp. 79-81; V's Restaurant Policy, p. 69-70)

Stated another way, to survive a motion to dismiss, a complaint must contain sufficient factual matter to show the claim for relief is "plausible on its face." *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014).

Importantly, legal conclusions and other unsupported conclusions stated in the Complaint may not be considered in determining a motion to dismiss. *See, e.g., Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("[W]e need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts."); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("We do not . . . blindly accept the legal conclusions drawn by the pleader from the facts."); *Granite Re, Inc. v. Nat'l Credit Union Admin. Bd.*, 956 F.3d 1041, 1044 (8th Cir. 2020) ("We do not accept [as true] the complaint's legal conclusions.").

It is proper, however, for the Court to consider the insurance Policies and Closure Orders, which are incorporated by reference and integral to the Complaint. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931, n. 3 (8th Cir. 2012) (the court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" without converting a motion under Rule 12(b)(6) into one for summary judgment.) Additionally, the Closure Orders are matters of public record.

Where, as here, the Complaint's allegations are in conflict with the terms of the Policy and the Closure Orders, the terms of the Policy and the Closure Orders control. *See, e.g.*, 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 & n. 22 (4th ed.) (Wright & Miller) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an

12

exhibit.") (collecting cases).

## II. There Is No Direct Physical Loss and Accordingly There Is No Coverage

As shown, the Policy states that it only provides coverage where there is direct physical loss. But, the Complaint does not allege facts showing any direct physical loss to any property. Accordingly, Plaintiffs cannot possibly prove their claim.

### A. There Are No Facts to Show Plaintiffs' Property was Physically Altered, thus there is No Physical Loss

Plaintiffs are asking the Court to create coverage from whole cloth. That is not allowed in Missouri, or Kansas. *Cowin v. Shelter Mut. Ins. Co.*, 460 S.W.3d 76, 81 (Mo. Ct. App. 2015) ("A court's function is to construe, not make, insurance contracts."); *Geer v. Eby*, 309 Kan. 182, 192, 432 P.3d 1001, 1009 (2019) ("The court shall not make another contract for the parties and must enforce the contract as made."). No case, in Missouri, Kansas or elsewhere, has held that a virus constitutes direct physical loss. By contrast, numerous courts hold that direct physical loss requires actual, tangible, permanent, physical alteration of property. *See, e.g.*, *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.,* 465 F.3d 834 (8th Cir. 2006);10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, *is widely held* to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (Emphasis added).

A seminal case concerning the direct physical loss requirement is *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.,* 465 F.3d 834 (8th Cir. 2006) (applying Minnesota law). There, the insured, Source Food, was a U.S.-based supplier of beef products that sourced its beef product production to a single supplier in Canada. *Id.* at 385. The U.S. government imposed an embargo

13

prohibiting the importation of Canadian beef and beef product after a cow in Canada tested positive for mad cow disease. *Id.* Source Food lost a truckload of beef product, which was not itself contaminated, when its Canadian supplier's truck could not cross the border into the United States. *Id.* As a result, Source Food could not obtain the beef product required to fill its orders and lost its most valuable customer when it was unable to deliver the required one to two truckloads of beef product per week. *Id.*

Source Food claimed lost business income under its insurance policy, which, like Plaintiffs' Policy, provided coverage if the suspension of business operations was "caused by *direct physical loss to Property*". *Id.* (Emphasis in original). Source Food argued that "the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id.* at 836. Thus, it could not be imported and sold. *Source Food* rejects this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838. The claimed loss was an economic loss, not a physical loss.

To the same effect is *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co*., 400 F.3d 613 (8th Cir. 2005) (applying Minnesota law). *Pentair* rejects the insured's contention that its Taiwanese suppliers' inability to function after a loss of power constituted direct physical loss or damage. *Pentair, Inc.*, 400 F.3d at 616. *Pentair* holds that loss of use or function is relevant to determining the amount of loss, *but only once the insured first establishes physical loss or damage*. *Id*. *Pentair* holds that "Pentair's argument, if adopted, would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose." (Emphasis in original). Pentair's argument was held to be wrong. *Pentair*, 400 R.3d at 616.

14

While *Source Food* and *Pentair* apply Minnesota law, they are well-reasoned cases. Moreover, there are no material differences in Minnesota's, Missouri's and Kansas's respective decisions on pertinent insurance issues. Each state seeks to apply the plain meaning of an insurance policy. *See*, *e.g.*, *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 842–43 (Mo. Ct. App. 2019); *Depositors Ins. Co. v. Dollansky,* 905 N.W.2d 513, 515 (Minn. Ct. App. 2017), aff'd, 919 N.W.2d 684 (Minn. 2018); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 976 & 979 (D. Kan. 2016). As such, it is appropriate for this Court to follow the sound construction and application of the "direct physical loss" requirement in *Source Food* and *Pentair*.

The same result is obtained under Kansas law. *See Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978 (D. Kan. 2016) (Robinson, C.J.) (applying Kansas law), *reconsideration denied*. *Great Plains Ventures* concerned a claim for insurance coverage for cosmetic hail damage. *Great Plains Ventures*, 161 F. Supp. 3d at 975-976. The property insurance policy there required "physical loss or damage" as a prerequisite to coverage. *Id.* at 978 & n. 44. *Great Plains Ventures* holds that the phrase "physical loss or damage" "unambiguously" requires physical alteration of property. *Id.* at 978-979 & n. 4.

Here, like *Source Food, Pentair* and *Great Plains Ventures*, the plain, unambiguous language of the Plaintiffs' Policies' Business Income and related Extra Expense coverages require, among other things, a suspension of Plaintiffs' respective businesses caused by *direct physical loss to property* at the Plaintiffs' premises. The Plaintiffs seek insurance coverage for financial losses they sustained as a result of what they summarily characterizes as "physical loss." (*See* Compl. at ¶¶ 102-105). They allege that their businesses premises and other real estate suffered physical loss. But, this is a legal conclusion that should not affect this dismissal motion.

The Complaint's factual allegations show there was no physical loss to property. Plaintiffs

summarily allege that financial losses due to Coronavirus constitute physical loss. (Compl. at ¶¶ 102 & 104-105). But, Plaintiffs allege no facts showing that there was any physical alteration, or structural degradation of their property. And, in any event, Plaintiffs concede they can allege no facts to show Coronavirus was on their properties *at all*, let alone that it caused physical loss to property. (*See* Compl. at ¶ 60) (speculating that "[i]t is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus and thereby infected the insured property with the coronavirus."). This fact alone is fatal to Plaintiffs' claims.

Even if the Coronavirus was present on the Plaintiff's' premises, the facts alleged by Plaintiffs and those subject to judicial notice also show the virus did not cause physical loss. The Plaintiffs do not plead facts that show there has been any physical alteration to their property. Rather, Plaintiffs allege that the virus is spread person to person. (Compl. at ¶ 53). They allege that the virus can spread by being on surfaces in a building, or in the air. (Compl. at ¶¶ 52 & 54). They acknowledge that the focus in combating this pandemic is on human to human transmission of the virus. (*See, e.g.*, Compl. at ¶ 66-67 & 80). Thus, Plaintiffs allege that "[t]o reduce the spread of the disease" the CDC has urged businesses to "clean and disinfect all surfaces, prioritizing the most frequently touched surfaces." (Compl. at ¶ 61). Humans infecting humans—through direct contact, or otherwise—is not direct physical loss to property.

As shown, Plaintiffs ask this Court to vastly expand Missouri and Kansas insurance law. In essence, Plaintiffs assert that the Policies' direct physical loss requirement is met whenever a business suffers economic harm. On this fundamental issue, the instant case cannot be distinguished from *Source Food*, *Pentair, Great Plains Ventures,* or the host of other cases holding that direct physical loss requires actual, tangible, permanent, physical alteration of property and

16

that the direct physical loss must cause a suspension of business operations for the Business Income and Extra Expense coverages to apply.

**B.      American Case Law Is Overwhelmingly Consistent With _Source Food, Pentair,_ and _Great Plains Ventures_.**

Like *Source Food*, *Pentair*, and *Great Plains Ventures*, courts throughout the country construe the "direct physical loss" requirement to preclude coverage in the absence of demonstrable, physical alteration of the insured's property. *See, e.g.*, 10A *Couch on Ins.* § 148:46, *supra* (collecting cases); *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at pp. 5 & 15 (the Coronavirus damages lungs; not printing presses.)[19]; *Mastellone v. Lightning Rod Mut. Ins. Co.,* 2008-Ohio-311, ¶ 61, 175 Ohio App. 3d 23, 40, 884 N.E.2d 1130, 1143 (mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity). *See also*, *Philadelphia Parking Auth. v. Fed. Ins. Co.,* 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (no direct physical loss to an airport parking facility that was closed following 9/11); *Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004), (modification of a hole on a golf course because of the loss of a tree did not constitute direct physical loss to the course).

As shown, Plaintiffs do not allege a single fact to show any physical alteration to their property. Instead, they allege that in response to COVID-19, Missouri and Kansas issued Closure Orders that required Plaintiffs to "cease and/or significantly reduce operations" at their premises. (Compl., ¶¶ 81, 106-107). This is not direct physical loss. Thus, based on the law nationally, there is no Business Income or Extra Expense coverage.

---

[19] No written opinion has been issued in *Social Life* at the time of filing this brief. A copy of the hearing transcript is available through the Federal Court's filing system, PACER. A file-stamped copy of the hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit E. A court considering a motion to dismiss may take judicial notice of judicial opinions and public records accessible from the internet. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

### C. Coronavirus Does Not Affect the Structural Integrity of Property; It Can Be Removed by Cleaning

Additionally, there is no direct physical loss in situations where a contaminant or substance can be cleaned. *See*, *e.g.*, *Mastellone*, 2008-Ohio-311, ¶ 68; *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 Fed.Appx. 569 (6th Cir. 2012).

*Mastellone* in particular, is very close, factually, to the present case. The relevant policy language in *Mastellone* was the same as that in the Cincinnati Policies. It too required "direct physical loss," also referred to in *Mastellone* as physical injury to property. *Id.* at ¶¶ 61-62. *Mastellone* holds that mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity. In this context, *Mastellone* rejected the argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." *Id.* at ¶ 63. The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of the siding." *Id.* at ¶¶ 61-69, *citing* 10A *Couch on Ins.* § 148:46 (3d Ed.1998).

Similarly here, the alleged presence of the Coronavirus did not cause direct physical loss to property. The loss Plaintiffs allege is caused by the presence of the virus in our world, not by any physical damage or effect on Plaintiffs' premises or someone else's property. Indeed, premises where the virus has been confirmed to be present, such as hospitals and nursing homes, have remained open. This is because those properties are themselves undamaged. Here, again, Plaintiffs admit they have no evidence the Coronavirus was in fact present on their premises. (*See* Compl. at ¶ 60).

Additionally, even if present on Plaintiffs' premises, the Coronavirus did not affect the structural integrity of the building, and Plaintiffs admit that it could be removed by cleaning. (*See* Compl. at ¶ 61). Indeed, the Centers for Disease Control and Prevention (CDC) has instructed that the Coronavirus can be wiped off surfaces by cleaning. "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Ex. C; *See also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed June 20, 2020)).[20] Thus, as in *Mastellone*, even if there is actual presence of the Coronavirus, there is no direct physical loss because the virus either dies naturally in days, or it can be wiped away.

Plaintiffs admit that cleaning will remove the Coronavirus. (*See* Compl. at ¶ 61). Therefore, Plaintiffs admit there is no direct physical loss here.

## D. The Lack of a Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss

The Plaintiffs claim that coverage exists because the Policies do not contain a virus exclusion. That assertion is legally incorrect. An exclusion can become relevant only if Plaintiffs first meet their burden of showing that there is direct physical loss. As established, Plaintiffs cannot do so. Thus, Plaintiffs cannot fulfill the threshold requirement for a Covered Cause of Loss. Covered Cause of Loss means all risks of direct physical loss that are neither excluded nor limited. Thus, if there is no direct physical loss in the first place, the existence or absence of a virus exclusion is irrelevant.

---

[20] Again, this Court may take judicial notice of the CDC reports and other matters of public record. *See, e.g., Stutzka*, 420 F.3d at 760, n. 2 (8th Cir. 2005).

For example, in *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co*., 114 Cal. App. 4th 548, 555, 7 Cal. Rptr. 3d 844, 850 (2003), there was a database crash. There was no direct physical loss. Therefore, it was "unnecessary to analyze the various exclusions and their application to this case." Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 333 (S.D.N.Y. 2014), *citing Roundabout Theatre Co. v. Cont'l Cas. Co*., 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002), a law firm closed because of a power outage. The loss of power was not a direct physical loss. Because there was no direct physical loss, it was unnecessary to decide whether a flood exclusion applied. *See also Zinser v. Auto-Owners Ins. Co.,* 2017-Ohio-5668, ¶ 33 (Ohio App.).

In sum, there is no coverage here because there is no direct physical loss. For that reason, no exclusion is needed.

## III.    There Is No Civil Authority Coverage

As established, the Policies' Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss, to property other than the Plaintiffs' property. Even then, there is only Civil Authority coverage if both of these additional requirements are met: a) access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and b) the action of civil authority is taken in response to dangerous physical conditions resulting from the direct physical loss. "[L]osses due to curfew and other such restrictions are not generally recoverable. * * * If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

### A. There is No Direct Physical Loss to Other Property

Cincinnati has demonstrated that direct physical loss to property other than the Plaintiffs' property is necessary. Courts nationwide have upheld that requirement. *See Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006).

Just as the Coronavirus is not causing direct physical loss to Plaintiffs' premises, it is not causing direct physical loss to other property. The Complaint fails to identify any direct physical loss, anywhere. Rather, it alleges Coronavirus and related Closure Orders have required their respective businesses, and the businesses of unidentified others, to "cease and/or significantly reduce operations." (*See*, *e.g.*, Compl. at ¶ 106). No facts are alleged that demonstrate that these things happened because of direct physical loss to anybody's property. Instead, closing or limiting of business operations protected the public from human to human transmission of the virus.

Plaintiffs also assert that "State and local governmental authorities and public health officials around the United States acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property." (Compl. at ¶ 108). This is inaccurate. None of the orders Plaintiffs rely on stated the Coronavirus causes "direct physical loss" or "direct physical damage" to property. However, even if they had, the meaning of the Policies' "direct physical loss" requirement is a question of law for the Court, which must be based on the language of the Policies and the facts of each individual claim. That meaning should not be based on blanket statements by politicians that supply no scientific basis for the statements. Regardless, as *Source Food, Pentair, Great Plains Ventures,* and other authorities show, structural damage is necessary for there to be

direct physical loss. Accordingly, there is no coverage here.

There are no alleged facts asserting any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus. There are, however, as admitted in the Complaint, facts showing that the Coronavirus can be removed via cleaning. As established, this is the marker of something that is ***not*** direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

**B.     The Requisite Prohibition of Access Is Lacking**

The Civil Authority coverage also requires that access to Plaintiffs' premises be prohibited by an order of Civil Authority. But, none of the orders Plaintiffs allege prohibit access to their premises. To the contrary, the Plaintiffs admit—as they must—that the Closure Orders allowed restaurant premises to remain open for food preparation, take-out, and delivery. (*See* Compl. at ¶¶ 73, 76, 78-80 & 93). Likewise, Plaintiffs concede that the Closure Orders did not prohibit access to salon premises. (*See* Compl. at ¶ 67). Based on the lack of such a prohibition here, there is no Civil Authority coverage.

This position is established by law nationally. There is no Civil Authority coverage unless there is an order prohibiting access to the insured's premises. For example, in *Southern Hospitality, Inc., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) (applying Oklahoma law), the plaintiff managed a number of hotels throughout the country. *S. Hosp., Inc.*, 393 F.3d at 1138. Its revenues and profits plummeted when the FAA grounded all flights in the United States following 9/11. *Id. Southern Hospitality* holds there is no civil authority coverage because the orders prohibited flights, not access to hotels. Likewise, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, 2010 WL 2696782, 4 (M.D. Pa. July 6, 2010), a bridge repair hindered or dissuaded the majority

of customers from visiting a ski resort. *Ski Shawnee* holds that did not constitute prohibition of access to the premises. *See also*, *e.g.*, *Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, 2 (N.D. Cal. Mar. 21, 1995) (riot-related curfew prevented insured's customers from being out and about, it did not prohibit access to the insured's premises); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970) (same); *Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of America*, 2015 WL 13547667, 6 (N.J. Super. L. July 24, 2015) (despite serious traffic issues in lower Manhattan following Superstorm Sandy, it was not completely impossible for the public to access the insured store). *See also Goldstein v Trumbull Ins. Co*., 2016 WL 1324197, 12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co*., 2005 WL 1331700, 4 (Minn. Ct. App. June 7, 2005).

Here, Plaintiffs admit that access to restaurant premises was not prohibited. They were permitted to remain open to provide food preparation, take-out, delivery and drive-thru services. (*See* Compl. at ¶¶ 73, 76, 78-80 & 93). Likewise, the Court may take judicial notice of the fact that under the Closure Orders discussed in the Complaint non-essential businesses, such as Plaintiff Studio 417's salons, remained open and accessible to owners, employees and others as required to perform "Minimum Basic Operations," including, but not limited to activities necessary to maintain the value of the business's inventory and facilities, process payroll, and facilitate employees' ability to work remotely. (See Compl. at ¶¶ 65-74).[21]

Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply.

---

[21] All of Studio 417's salons are in Missouri. Copies of the Missouri Closure Orders are public records, and available via the internet. See, e.g., https://www.greenecountymo.gov/files/PDF/file.pdf?id=35369 (Springfield, Mar. 24, 2020); https://www.springfieldmo.gov/DocumentCenter/View/48367/Greene-County-Stay-at-Home-Order (Springfield, Apr. 6, 2020); https://www.kcmo.gov/home/showdocument?id=4065 (Kansas City, Mar. 21, 2020); https://www.kcmo.gov/home/showdocument?id=4139 (Kansas City, Apr. 16, 2020).

23

## IV. There Is No Ingress and Egress Coverage

The Ingress and Egress coverage requires both a direct physical loss at a location contiguous to the insured's property and the prevention of access to the insured's property as a result of that direct physical loss. As Cincinnati has demonstrated, the Complaint does not allege any facts that show direct physical loss at any location, let alone at a location contiguous to Plaintiffs' premises. Moreover, even if the alleged "likely" presence of the Coronavirus resulted in direct physical loss, which it did not, that presence certainly did not prevent access to the insured premises.

Regardless, even in the event the Closure Orders prevented access to Plaintiffs' premises, and they did not, the Policies unambiguously state that the Ingress and Egress coverage "does not apply if ingress or egress from the 'premises' is prohibited by civil authority." (Studio 417 Policy, p. 95).[22] Here, the Closure Orders issued by civil authorities are the only identified cause of Plaintiffs' alleged losses. Because the Complaint's allegations establish access to Plaintiffs' premises was not prevented, the Ingress and Egress coverage does not apply.

## V. There Is No Dependent Property Coverage

The Dependent Property coverage requires both a direct physical loss to dependent property and a necessary suspension of the insured's business as a result of that direct physical loss. The Policies define "dependent property" to include property operated by others whom the insured depends on to deliver material or services to it, accept its products or services, manufacture products for delivery to its customers, or attract customers to its business. (*See*, *e.g.*, Studio 417 Policy, p. 64).[23]

Here, again, the Complaint does not allege any facts that show direct physical loss at any

---

[22] (*See also* Grand Street Policy, p. 145; Trezomare Policy, p. 108; V's Restaurant Policy, p.102).
[23] (*See also* Grand Street Policy, p. 98; Trazomare Policy, p. 80; V's Restaurant Policy, p. 69).

location, let alone at a dependent property. Moreover, there are no allegations that there was a necessary suspension of the Plaintiffs' businesses because of the lack of material or services deliveries. Accordingly, there is no Dependent Property coverage.

## VI.    There Is No So-Called Sue and Labor Coverage

The Policies impose on Plaintiffs certain "Duties in the Event of Loss or Damage." Among other things, the Plaintiffs are required to protect Covered Property from further damage and keep a record of expenses incurred to protect the Covered Property for consideration in the settlement of the claim ("the Preservation of Property Clause"). (*See, e.g.*, Studio 417 Policy, p. 49-50 & 96).[24] Plaintiffs refer to this provision as the "Sue and Labor coverage." Plaintiffs contend, incorrectly, that the "Sue and Labor coverage" applies to exclusively financial losses caused by the Coronavirus.

As an initial matter, the Preservation of Property Clause is not an additional coverage. Instead, it imposes a duty on the insured to prevent further damage to the extent reasonably possible *in the event of a Covered Cause of Loss*.  The insured can recover these expenses in such a circumstance. However, the Policies' Preservation of Property Clause expressly provides: "[I]n no event will we pay for any subsequent 'loss' resulting from a cause of loss that is not a Covered Cause of Loss." (*See, e.g.*, Studio 417 Policy, p. 49-50 & 96).[25]

There is no Covered Cause of Loss here because, as demonstrated above, there is no direct physical loss to Plaintiffs' Covered Property. Thus, the Policies' so-called Sue and Labor coverage does not apply.

---

[24] (*See also* Grand Street Policy, pp. 83-84 & 146; Trezomare Policy, pp. 65-66 & 109; V's Restaurant Policy, pp. 54-55 & 103).
[25] (*See also* Grand Street Policy, pp. 83-84 & 146; Trezomare Policy, pp. 65-66 & 109; V's Restaurant Policy, pp. 54-55 & 103).

**<u>Conclusion</u>**

There is no possible coverage because the Coronavirus does not cause direct physical loss. In the absence of direct physical loss, and for the other reasons discussed above, Plaintiffs have not alleged a claim on which relief can be granted. Accordingly, Cincinnati respectfully requests that its Motion to Dismiss be granted.

June __, 2020

Respectfully submitted by:

BY: /s/ Michael L. Brown
WALLACE SAUNDERS, P.C.
Michael L. Brown    MO 55732
Kelvin J. Fisher     MO 56573
10111 West 87th Street
Overland Park, KS 66212
(913) 888-1000 FAX - (913) 888-1065
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com


LITCHFIELD CAVO LLP
Daniel Litchfield    *PHV pending*
Ericka Hammett    *PHV*
303 West Madison Street
Suite 300
Chicago, IL 60606
(312) 781-6669 FAX (312) 781-6630
litchfield@litchfieldcavo.com
hammett@litchfieldcavo.com

ATTORNEYS FOR DEFENDANT THE
CINCINNATI INSURANCE COMPANY

26

I hereby certify that on June 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Brandon J.B. Boulware
Boulware Law LLC
1600 Genessee Street, Suite 416
Kansas City, MO 64102
brandon@boulware-law.com

Todd Johnson
Votava Nantz & Johnson, LLC
9237 Ward Parkway, Suite 240
Kansas City, MO 64114
tjohnson@vnjlaw.com

Jack Thomas Hyde
Wagstaff & Cartmell
4740 Grand Ave., Suite 300
Kansas City, MO 64112
jhyde@wcllp.com

Thomas A. Rottinghaus
Wagstaff & Cartmell
4740 Grand Ave., Suite 300
Kansas City, MO 64112
trottinghaus@wcllp.com

Tyler Hudson
Wagstaff & Cartmell
4740 Grand Ave., Suite 300
Kansas City, MO 64112
thudson@wcllp.com

ATTORNEYS FOR PLAINTIFFS