IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STUDIO 417, INC., *et al*. | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 6:20-CV-03127 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT THE CINCINNATI INSURANCE COMPANY'S
REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

WALLACE SAUNDERS, P.C.
Michael L. Brown     MO 55732
Kelvin J. Fisher     MO 56573
10111 West 87th Street
Overland Park, KS 66212
(913) 888-1000 FAX - (913) 888-1065
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com

LITCHFIELD CAVO LLP
Daniel Litchfield     *PHV*
Ericka Hammett     *PHV*
303 West Madison Street
Suite 300
Chicago, IL 60606
(312) 781-6669 FAX (312) 781-6630
litchfield@litchfieldcavo.com
hammett@litchfieldcavo.com

ATTORNEYS FOR DEFENDANT THE
CINCINNATI INSURANCE COMPANY

**OVERVIEW AND SUMMARY OF ARGUMENT**

Plaintiffs seek to have this Court rule that policies that protect against direct physical loss or damage to property apply to purely financial losses from the Coronavirus pandemic.[1] Cincinnati moves to dismiss the Complaint because its allegations and the plain language of the Policies show Plaintiffs cannot possibly prove their claim.

**ARGUMENT**

**I. The Policies Require Direct Physical Loss to Plaintiffs' Property and None is Alleged Here.**

Plaintiffs do not dispute that the interpretation of an insurance policy is a question of law for this Court. (Opp. p. 4). Nor do Plaintiffs dispute that where the language of an insurance policy is clear and unambiguous, "the Court uses the meaning that would be attached by an ordinary person." (Opp. p. 4). Here, the Policy clearly and unambiguously requires direct *physical* loss, *i.e.*, actual, tangible, permanent, physical alteration, to property. Plaintiffs allege nothing of the sort.

**A. The Policies' Direct Physical Loss Requirement.**

The Policies make clear that direct *physical* loss is a fundamental prerequisite for *any* coverage under the Policy. This includes the Business Income, Extra Expense, Civil Authority, Extended Business Income, Dependent Property, and so-called Sue and Labor coverages Plaintiffs seek. (CIC Brf. pp. 8-9). Plaintiffs do not dispute that the requirement of direct physical loss or damage is applicable to each of these coverages. Rather, they make fallacious and legally unsupported assertions that there is direct physical loss here.

---

[1] Cincinnati issued separate policies to each of the named Plaintiffs. However, Plaintiffs agree each policy contains identical pertinent language. (Opp. Br. at p. 4, fn. 4). While Cincinnati's Motion included parallel citations to the individual policies, Plaintiff's Opposition Brief cites only the applicable page numbers of the Studio 417 Policy. (Dkt. No. 1-1; Compl. Ex. A). For brevity, and consistency, Cincinnati follows suit. References to the page numbers here refer to the ECF-stamped page numbers in the top margin of Studio 417 Policy. (Dkt. No. 1-1) ("Policy at p. __"). However, references to "Policy" or "Policies" in the body of this brief refer collectively to the Studio 417, Grand Street, Trezomare, and V's Restaurant Policies. (Dkt. Nos. 1-1, 21-1, 21-2, & 21-4, respectively).

1

### B. Plaintiffs Cannot Evade the Fundamental Prerequisite for Any Coverage Under the Policies, Direct *Physical* Loss.

Faced with the fact that the direct physical loss requirement applies to all of the coverages that they seek, Plaintiffs essentially argue that this requirement should not be enforced because the Policies do not define "physical loss" or "physical damage". (Opp. pp. 5-6).[2] But, Plaintiffs concede, as they must, that "the Court uses the meaning [of words in the policy] that would be attached by an ordinary person," and the term must be construed in the context of the phrase that contains it. (Opp. p. 5). *See also, Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. Ct. App. 2011) ("[w]e give the language used in an insurance contract its plain and ordinary meaning"). As will be shown, the phrase direct physical loss should not be read to eliminate the physical aspect of the phrase.

Cincinnati established in its initial brief that courts throughout the country find that the plain and ordinary meaning of ***physical*** loss to property requires actual, tangible, physical, structural, alteration of property. (CIC Brf. pp. 13-20). It cited numerous cases to that effect. *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, ***is widely held*** to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (emphasis added) (collecting cases); *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.,* 465 F.3d 834, 838 (8th Cir. 2006) ("To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct

---

[2] Plaintiffs argue that the use of the terms "physical loss" or "physical damage" favors their case. (Opp. pp. 2 & 10). But, Cincinnati has shown that both terms require the loss or damage at issue be ***direct*** and ***physical*** in nature. (CIC Brf. pp. 8-9). *See also*, *Rose's 1, LLC v. Erie Insurance Exchange*, No. 2020 CA 002424 B at 5 (D.C. Super Ct. August 6, 2020), *infra*. In this context, the use of the word "or" does not eliminate the pervasive requirement of direct and physical loss or damage.

2

physical loss to property would render the word 'physical' meaningless."); *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978 & n. 44 (D. Kan. 2016) (Robinson, C.J.), *reconsideration denied*[3]*; Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014); *N.E. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) (expanding coverage to include loss-of-use damages when the property has not been physically impacted in some way "would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *3 (S.D. Miss. Nov. 19, 2007) (same); *Phila. Parking Auth. v. Fed. Ins. Co.,* 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co*., 187 Cal. App. 4th 766, 780 (2010); *Mastellone v. Lightning Rod Mut. Ins. Co.,* 2008-Ohio-311, ¶ 61, 175 Ohio App. 3d 23, 40, 884 N.E.2d 1130, 1143 (mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity and could be removed by cleaning). Plaintiffs try, but fail, to distinguish these cases by asserting that they involve summary judgment motions rather than motions to dismiss under Rule 12(b)(6). This is a distinction without a difference. In both instances, the relevant inquiry is whether there was physical injury to property. In both instances, the non-moving party failed to either allege or show facts sufficient to sustain its claim.

---

[3] Plaintiff asserts that *Great Plains* supports its interpretation of the Policy. Plaintiff summarily asserts that *Great Plains* says "loss of usefulness or function" is physical loss. (Opp. pp. 13-14) However, this is simply not what *Great Plains* says. *Great Plains* finds coverage specifically because the insured sustained physical alteration of its property. *Great Plains*, 161 F. Supp. 3d at 978 ("[T]he phrase "physical damage" in an insurance policy is widely accepted to mean a "physical alteration."[44] Thus, the Court finds that the phrase "physical loss or damage" provides coverage where, as here, cosmetic hail dents physically alter an insured's property.")

3

Moreover, all the cases that have addressed the issue whether the presence of Coronavirus, or a loss of use of a business because of government orders, squarely support Cincinnati here. *Rose's 1, LLC v. Erie Insurance Exchange*, No. 2020 CA 002424 B (D.C. Super Ct. August 6, 2020),[4] holds that governmental Coronavirus orders "did not [a]ffect any direct changes to the properties," "did not have any effect on the material or tangible structure of the insured properties," and "were not such a direct physical intrusion" so as to cause direct physical loss. *Rose's*, No. 2020 CA 002424 B at 5, 7, 9. Thus, *Roses* holds that there was no insurance coverage.

In addition to *Rose's*, *Gavrilides Management Co. LLC v. Michigan Insurance Co.*, Case No. 20-000258-CB (Ingham County, Mich., Jul. 1, 2020) and *Social Life Magazine*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at 15, reach the same conclusion. Coronavirus does not cause direct physical loss.[5] *Gavrilides* involves a restaurant's claim for business income loss related to the Coronavirus and resulting government orders. *Gavrilides*, in granting summary disposition to the insurer, holds:

> [I]t is clear from the policy coverage provision **only direct physical loss is covered.** Under their common meanings and under federal case law as well, that the plaintiff has cited that interprets this standard form of insurance, direct physical loss of or damage to the property has to be something with material existence. Something that is tangible. **Something** according to the one case that the plaintiff has cited from the Eastern District, **that alters the physical integrity of the property.** The complaint here does not allege any physical loss of or damage to the property . . . . So, again, the plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. **There has to be some tangible, i.e., physical damage to the property**.

*Gavrilides* Order & Trans. at 18:20–20:9 (emphasis added).

---

[4] The written order and opinion in *Rose's 1* is attached as Exhibit A. The order was published shortly before this brief was filed and a reporter citation is not yet available.

[5] *Gavrilides* was decided after Cincinnati filed its initial brief. As such, the Order and transcript of the decision issued in *Gavrilides* are attached as Exhibit B. "It is well-established that a district court may take judicial notice of public records such as judicial rulings, and consider them on a motion to dismiss." *Challenger Powerboats, Inc. v. Evans*, No. 4:07CV85 TIA, 2007 WL 2885346, at *2 (E.D. Mo. Sept. 27, 2007) (collecting cases).

101920983.v1

Like *Roses* and *Gavrilides*, *Social Life Magazine*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at 15, addresses the direct physical loss issue in a Coronavirus coverage case. *Social Life* denies a motion for preliminary injunction.[6] The principal basis for that decision is the conclusion that the Coronavirus does not cause direct physical loss to property. Social Life famously states that the virus damages lungs, not printing presses. (*Social Life* Trans. at 5). *Social Life* holds that "this kind of business interruption needs some damage to the property to prohibit you from going." (*Social Life* Trans. at 15). Cincinnati cited and relied on *Social Life* in its initial brief. But, Plaintiffs fail to address it, admitting its applicability and merit.

As demonstrated below, Plaintiffs concede the Orders and COVID-19 did not cause a distinct, demonstrable, physical alteration of their property. Instead, Plaintiffs summarily assert, contrary to the Orders and the allegations of their Complaint, that they "suffered direct physical loss of the use of their property as a result of the global Coronavirus pandemic (COVID-19) and government closure orders that made their property uninhabitable and/or unusable for its intended business operation." (Opp. p. 1). But, this is exactly the argument that is rejected in cases around the country that address the meaning of direct physical loss. These cases include the only cases addressing this issue in the Coronavirus context. Accordingly, this Court should reject Plaintiffs' construction of the Policies as unreasonable and inconsistent with their plain language.

    **C.    Missouri Law, and the Law Nationally, Support Cincinnati's Construction of the Policy.**

To the extent Plaintiffs purport to cite supporting cases, those cases involve language that does not appear in the Policies. Further, Plaintiffs rely on purported facts that are not alleged in

---

[6] No written opinion was issued in *Social Life*, but a copy of the hearing transcript reflecting the Court's ruling and rationale was attached as Exhibit E to Cincinnati's initial brief.

the Complaint. Accordingly, Plaintiffs' arguments and cited cases are unavailing.[7]

### 1. Plaintiffs' Interpretation of the Policies is Unreasonable Because It Is Based on Language that Does Not Appear in the Policies.

Cincinnati has established that a mere loss of use of property is not direct physical loss to that property. In response, Plaintiffs incorrectly contend that *Mehl v. Travelers Home & Marine Ins. Co.,* No. 4:16-cv-01325 CDP, 2018 U.S. Dist. LEXIS 74552, at *2 (E. D. Mo. May 2, 2018), and "numerous other courts have held that *loss of use of* property constitutes 'physical loss.'" (Opp. p. 7 & Ex. 1) (emphasis added). *Mehl* is distinguishable because the policy there expressly covered "loss of use," using those very words. *Mehl*, 2018 U.S. Dist. LEXIS 74552, at *2.[8] Unlike *Mehl*, the Policies here do not define "loss" or "damage" to include "loss of use". As such, *Mehl* is simply irrelevant here.

Plaintiffs also rely on *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 787 F.2d 349 (8th Cir. 1986). Plaintiffs contend that this so-called "relevant" and "controlling" case holds that the phrase direct physical loss is ambiguous because it was not defined. (Opp. pp. 1, 3, 5-6, 11-12). Plaintiffs are incorrect. *Hampton* concerns a building in imminent danger of collapse. *Hampton*, 787 F.2d at 351. The building owner ordered immediate evacuation of all tenant businesses, including the insured's. *Id*. Hampton removed its inventory and property from the building before it was eventually demolished and sold that property for salvage. *Id*. Hampton sought property coverage for business losses. *Hampton* finds that the policy there was ambiguous and therefore

---

[7] Further, to the extent Plaintiffs argue the Policies provide coverage because they do not contain a virus exclusion, Cincinnati established that the absence of an exclusion is irrelevant where there is no direct physical loss, and thus no coverage, in the first instance. (CIC Brf. pp. 19-20).Plaintiffs do not dispute this establishment.

[8] Plaintiffs note that *Mehl* cited *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.,* 54 S.W.3d 661, 668 (Mo. App. 2001) in conjunction with its holding the policy at issue was ambiguous. (Opp. P. 6). However, *Mehl* cited *German St. Vincent* for the general proposition that ambiguous policy language must be construed in favor of the insured, not that the language in the Policies here is ambiguous. But, as observed in *German St. Vincent*, where, as here, the policy language is plain and unambiguous"[c]ourts enforce insurance policies ***as written***." *Id.* at 668 (emphasis added).

provided coverage. *Id.* at 352. Nevertheless, *Hampton* explicitly recognizes that direct **physical loss** requires actual, tangible damage to property. Thus, it holds that "Hampton suffered **direct, concrete and immediate loss** due to extraneous **physical damage** to the building. *Id*. (emphasis added). Here, the Plaintiffs' factual allegations and the Orders show there was no physical damage or injury to property. Indeed, the CDC Guidelines and case authority show the Coronavirus presents no risk of physical loss to Plaintiffs' property at all, because it can be wiped away, without causing any physical damage. (CIC Brf. pp. 18-19).

Citing *Mehl v. Travelers Home & Marine Ins. Co.,* No. 4:16-cv-01325 CDP; *Hampton Foods*, 787 F.2d 349; *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.,* 311 F.3d 226, 231, 236 (3d Cir.2002); *Manpower Inc. v. Ins. Co. of the State of Penn.,* No. 08C0085, 2009 WL 3738099, at *2, *6 (E.D. Wis. Nov. 3, 2009);[9] *Prudential Prop. & Cas. Co. v. Lillard–Roberts,* CV–01–1362–ST, 2002 WL 31495830, at *7-*8 (D. Or. June 18, 2002); *Murray v. State Farm Fire & Cas. Co.,* 509 S.E.2d 1, 16–17 (W. Va. 1998); *W. Fire Ins. Co. v. First Presbyterian Church,* 437 P.2d 52, 55-56 (Colo. 1968); *General Mills, Inc. v. Gold Medal Ins. Co,* 622 N.W.2d 147, 151-152 (Minn. App. 2001); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.,* 563 N.W.2d 296, 300 (Minn. App. 1997); *Travco Ins. Co. v. Ward,* 715 F. Supp. 2d 699, 702 (E.D. Va. 2010); *Matzner v. Seaco Ins. Co.,* No. 96-0498-B, 1998 WL 566658, at *3 (Mass. Super. Ct. August 12, 1998); *Hughes v. Potomac Ins. Co.,* 18 Cal. Rptr. 650, 655 (Cal. Dist. Ct. App. 1962); *Cooper & Olive Indus. v. Travelers Indem. Co.,* No. C-01-2400, 2002 WL 32775680, at *2 (N.D. Cal. Nov. 4, 2002); *Gregory Packaging, Inc. v. Travelers Prop. Cas.,* No. 2:12-cv-04418, 2014 WL 6675934, at *1 (D. N.J. Nov. 25, 2014), Plaintiffs contend that courts applying Missouri law have concluded

---

[9] *Manpower*, like *Hampton*, involved a claim for loss of use of business personal property resulting from actual, structural damage to a building. *Manpower* expressly distinguished its holding from cases construing "direct physical loss" as required for business interruption coverage using language similar to the Policies here. *Id*. at *6.

that actual physical injury to property is not required. (Opp. p. 11). Alternatively, Plaintiffs say that courts nationwide hold that physical loss or damage may occur without physical injury to property. (Opp. p. 12). But, without exception, each of the cases on which Plaintiffs rely is readily distinguishable. The most glaring differentiator is that most of the policies reviewed in these cases apply different policy language than the Cincinnati Policies. The policies in those cases state that they cover loss ***of*** property or expressly apply to ***loss of use*** of property. But, Cincinnati's Policies cover direct physical loss or damage ***to*** property. They do not state coverage for loss of property or loss of use of property. Plaintiffs' remaining cases involve actual, structural, ***physical*** loss or damage and thus are consistent with Cincinnati's position here.[10]

Likewise, the policy in *Port Authority* did not expressly require physical loss or damage "to" property. *Port Authority*, 311 F.3d at 231. In any event, *Port Authority* holds that there is no coverage for the insured's alleged asbestos-related losses because "[t]he mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage." *Id*. at 226. Here, even if the Complaint alleged the presence of COVID-19 on Plaintiffs' premises, which it does not, *Port Authority* supports Cincinnati's position that the mere presence of the virus does not constitute physical loss or damage, and neither does the general threat of future harm.

---

[10] Moreover, several cases have addressed the difference between policies covering physical loss "of" property, as opposed to those covering physical loss "to" property. *See, e.g.*, *Source Food,* 465 F.3d at 838; *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSX), 2018 WL 3829767, at *3-4 (C.D. Cal. July 11, 2018). These cases hold that even if coverage for loss "of" property may include "loss of use of property," coverage for physical loss "to" property does not. Also, even if the phrase physical loss of property is construed to include purely financial loss where property has not sustained actual, tangible, injury or damage there is no way the phrase physical loss to property could reasonably encompass purely financial losses. Such a reading would render the Policy's use of the word "to" meaningless. *See, e.g., Total Intermodal,* 2018 WL 3829767, at *4 (distinguishing *MRI Healthcare Center*, 187 Cal.App.4th 766 and *Newman Myers*, 17 F.Supp.3d 323 ("because the clauses on those cases differ from the Coverage clause here, it stands to reason that they also differ in meaning, such that 'direct physical loss *of*' should be construed differently from 'direct physical loss *to*' or 'direct physical loss.'"); (Opp. 7).

8

Many of Plaintiffs' cases, including *Hampton, Manpower, Murray, General Mills, Sentinal, Lillard-Roberts*, and *First Presbyterian,* also support Cincinnati because in each case there was a permanent ***physical*** alteration of the property, or the expressly insured "risk of" permanent ***physical*** alteration of the property. Here, there is no physical alteration of property, let alone any permanent physical alteration. It is undisputed the virus can be removed by cleaning and thus does not physically injure or damage property. *See, e.g.*, *Mastellone,* 2008-Ohio-311, ¶ 61, 175 Ohio App. 3d 23, 40, 884 N.E.2d 1130, 1143; *Mama Jo's,* 2018 WL 3412974 at *9; *Universal Image*, 703 F.Supp.2d at 710, *aff'd*, 475 Fed.Appx. 569.[11] Thus, none of these cases show the Policies provide coverage for Plaintiff's purely financial losses.[12]

For all of the coverages Plaintiffs seek, the Policies require direct physical loss or damage to property. The Complaint fails to identify any direct physical loss, anywhere, because there are no factual allegations of actual, tangible, permanent, physical alteration, to any property. As such, the Policies' Business Income, Extra Expense, Civil Authority, Ingress and Egress, Dependent Property, and so-called Sue and Labor Coverages do not apply.

II. **Plaintiffs Do Not Allege Facts to Show the Requisite Prohibition or Prevention of Access to Their Property, as Required for the Policies' Civil Authority and Ingress and Egress Coverages to Apply.**

In its initial brief, Cincinnati established that neither the Orders nor COVID-19 prohibited access to the Plaintiffs' premises. (CIC Brf. pp. 22-24). Plaintiffs contend that whether access to

---

[11] *Acord*, *Lillard–Roberts,* CV–01–1362–ST, 2002 WL 31495830, at *8.
[12] *Newman Myers*, 17 F. Supp. 3d 323, is factually analogous to this case, and addresses and distinguishes several of the same cases Plaintiffs cite here. *See Newman* Myers, 17 F. Supp. 3d at 329-332 ("Newman Myer's cases are, however, distinguishable. In each case there was some compromise to the physical integrity of the workplace. . . . The critical policy language here – "direct physical loss or damage" . . . unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage.") *Rose's* similarly considers and distinguishes many of Plaintiffs' cited cases. *Rose's*, No. 2020 CA 002424 B at 5-7 ("[N]one of the cases cited by Plaintiffs stand for the proposition that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy.") *Rose's* instead adopts the well-reasoned authorities relied upon by Cincinnati. (*Id*. at 7-9). While *Rose's* had not yet been decided at the time Cincinnati filed its initial brief, Cincinnati cited, and Plaintiffs failed to acknowledge or distinguish, *Newman Myers*.

9

their premises was prohibited or prevented is a factual issue, and thus not appropriate for determination on a motion to dismiss. However, the record for the purposes of Rule 12(b)(6) motion consists of the pleadings, exhibits, and other materials integral to the Complaint. (*Id*. pp. 11-12). Here, Plaintiffs' allegations conflict with the Orders, so the Orders control. (*Id*. p. 12). As demonstrated, the Orders support Cincinnati and show that access to the Plaintiffs' premises was not prohibited or prevented. (*Id*. at pp. 22-24).[13] Thus, there is no Civil Authority or Ingress and Egress coverage.

## **Conclusion**

The coverages sought by Plaintiffs under their commercial property policies all require there to be direct physical loss to property. Courts have widely held that this property insurance trigger requires physical alteration of property. More specifically, at least three courts have ruled on the direct physical loss issue in the context of the Coronavirus pandemic, and each held that the presence of the Coronavirus is not direct physical loss as a matter of law.

Plaintiffs' Complaint does not contain sufficient factual allegations to support a viable claim for relief on its face. For the reasons established in its initial brief, and above, Cincinnati's Motion to Dismiss should be granted.

August 10, 2020.

---

[13] *See also*, *Newman Myers*, 17 F. Supp. 3d at 327 (dispute whether insured was entitled to coverage for business income and extra expenses resulting from its inability to access its office premises because the power company preemptively shut-off power in anticipation of flooding due to approach of Hurricane Sandy presented a "pure question of law" for the court).

Respectfully submitted by:

**DEFENDANT, THE CINCINNATI INSURANCE COMPANY**

WALLACE SAUNDERS

BY: /s/ Michael L. Brown
    Michael L. Brown    KS# 21313
    Kelvin J. Fisher    KS#22014
    10111 West 87th Street
    Overland Park, KS 66212
    (913) 888-1000 FAX - (913) 888-1065
    mbrown@wallacesaunders.com
    kfisher@wallacesaunders.com

AND

    LITCHFIELD CAVO LLP
    Daniel Litchfield    *PHV*
    Ericka Hammett    *PHV*
    303 West Madison Street
    Suite 300
    Chicago, IL 60606
    (312) 781-6669 FAX (312) 781-6630
    litchfield@litchfieldcavo.com
    hammett@litchfieldcavo.com

ATTORNEYS FOR DEFENDANT THE CINCINNATI INSURANCE COMPANY

CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Brandon J.B. Boulware
Boulware Law LLC
1600 Genessee Street, Suite 416
Kansas City, MO 64102
brandon@boulware-law.com

Todd Johnson
Votava Nantz & Johnson, LLC
9237 Ward Parkway, Suite 240
Kansas City, MO 64114
tjohnson@vnjlaw.com

Jack Thomas Hyde
Wagstaff & Cartmell
4740 Grand Ave., Suite 300
Kansas City, MO 64112
jhyde@wcllp.com

Thomas A. Rottinghaus
Wagstaff & Cartmell
4740 Grand Ave., Suite 300
Kansas City, MO 64112
trottinghaus@wcllp.com

Tyler Hudson
Wagstaff & Cartmell
4740 Grand Ave., Suite 300
Kansas City, MO 64112
thudson@wcllp.com

ATTORNEYS FOR PLAINTIFFS


  /s/ Michael L. Brown
For the Firm

12
101920983.v1